JUSTICE NELSON
dissents.
¶27 I respectfully dissent from the Court's opinion. I would affirm the decision of the District Court.
¶28 As to Issue 1,1 am at a complete loss to understand the majority's rationale. As a prelude to the divorce decree Rausch and Hogan signed a property settlement agreement and determined to hold the disputed piece of residential property as joint tenants with right of survivorship.[1] The trial court found that this agreement was "equitable." Thus, the court approved the agreement.
¶29 There was no issue in the divorce litigation raised, much less litigated, nor were there any findings or legal conclusions entered, as to which party owned what percentage interest in the jointly held property. There was no testimony in the divorce proceedings to which we have been directed concerning the parties' respective equities in the jointly held property. The divorce litigation ended simply with a mutual agreement to hold a certain property in joint tenancy and the court's approval of that agreement. Nothing more. As a result, the *389 parties left their marriage owning a property as joint tenants with right of survivorship-presumptively 50-50, under the law. End of story.
¶30 Under these circumstances, why and how principles of res judicata and collateral estoppel bar Hogan from presenting proof in a separate partition action to rebut the presumption of 50 percent ownership, is a mystery to me. Res judicata cannot bar Hogan from "relitigating" the matter of Rausch's ownership claim because the parties never "litigated" that claim in the first instance. Similarly, Rausch and Hogan never” litigated any issue regarding the parties' respective percentage of ownership in the jointly held property. Accordingly, collateral estoppel is not a viable bar to Hogan's proof either. Finally, a judgment on the merits was never entered respecting the percentage of ownership claim/issue — the onlyjudgmentthe divorce court entered was that it was "equitable" that the parties agree to hold the property as joint tenants following the dissolution of their marriage. Importantly, there was no evidence, findings, or conclusions, much less any decision, in the divorce action as to what were the parties' exact percentages of ownership in the jointly held property. Res judicata and collateral estoppel, thus, have no application to the partition action.
¶31 Issue 2 is even more problematic. As the majority points out in ¶ 24, the law presumed that Rausch and Hogan left the divorce holding the joint tenancy property 50 percent each. As the majority also observes, this legal presumption is rebuttable and the party seeking to establish an unequal division in a partition action must prove that the joint tenancy percentages were something other than the presumed SO-SO. That, of course, begs the question of what sort of proof will the party who disputes equal shares have to put before the fact finder to overcome the presumption.
¶32 Obviously, in the context of this case, the most critical proof that Hogan could have brought to bear on the percentages issue was evidence of Rausch's pre-marital and marital contributions, if any, to the property. This is the evidence which the majority characterizes-or, rather, mis-characterizes — as the "marital equities" evidence. And, as we learn in ¶ 21, this is the evidence that the majority concludes the trial court erred in considering. In short, according to the majority, Hogan was barred (by res judicata and collateral estoppel arising as a result of the divorce case) from putting before the trial court in the partition action the very evidence that he needed to offer in order to rebut the rebuttable presumption of equal shares.
¶33 Not content to leave Hogan's case a lifeless corpse on the courtroom floor, however, the majority then proceeds in ¶¶ 24 and 25 to fault him for failing to carry his burden of proof. How could he? The majority made that an impossibility by its decision in Issue 1.
¶34 The bottom line is this: the divorce action and the partition action *390 were completely discrete and unrelated actions. The divorce proceeding resolved the property distribution issue and left the parties, by their agreement, as joint owners of the residence. In the absence of the parties specifying anything in their agreement to the contrary, the law presumed (rebuttably) that their joint ownership was in equal shares. Importantly, the only matter the divorce litigation resolved was that the parties would hold the residence as joint tenants and that it was equitable that they do so.
¶35 The partition action, on the other hand, was brought specifically to severe the parties' joint interest in the property and, as an integral part of that litigation, to determine whether the presumption of equal shares could or should be rebutted. The partition litigation-and not the divorce litigation-necessitated the contributions evidence that Hogan sought to offer so that, in the words of § 70-29-101, MCA, "the respective rights of the persons interested [in the property]" could be determined and divided. It is this evidence which, on the one hand, the majority holds was improperly considered by the trial court but, which, in the next breath, the majority faults Hogan for not offering.
¶36 The District Court was correct in considering Hogan's evidence, and it was also correct in awarding him 100 percent of the residence-a property which he brought into the marriage and to which Rausch contributed little, if anything at all. Our decision in this case has unfairly deprived Hogan of his lawful interest in the residence. Worse, our analysis in arriving at this result is reminiscent of a scene from the Three Stooges-the one where Larry is chucking Curly under the chin while Moe is simultaneously hammering him on the head. Whup! Whup! Whup!
¶37 I dissent.
JUSTICE TRIEWEILER joins in the foregoing dissent.

 The pertinent part of the settlement agreement states in its entirety: "Notwithstanding the foregoing, Husband and Wife shall continue to own jointly between them, with the right of survivorship, the parties residence located in Stillwater, Montana, more particularly described as follows: [then follows the legal description of the property]."